IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Nellie Sanders Jones, | ) | Civil Action No. 8:11-cv-01664-TLW-JDA |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[1]  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB").  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

In September 2008, Plaintiff filed an application for DIB, alleging an onset of disability date of June 12, 2008.[2]  [R. 119–25.]  The claim was denied initially and on reconsideration by the Social Security Administration ("the Administration").  [R. 37–40, 49–52, 56–57.]  Plaintiff requested a hearing before an administrative law judge ("ALJ")

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]The record indicates Plaintiff also filed an application for Supplemental Security Income ("SSI") in September 2008. [R. 126–28.] Plaintiff was found to be ineligible for SSI because of her income.  [R. 41–48.] Plaintiff did not appeal the denial of her SSI application.

[R.58–59], and on May 17, 2010, ALJ Peter C. Edison conducted a de novo hearing on Plaintiff's claims [R. 21–36].

The ALJ issued a decision on June 10, 2010, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 11–20.] At Step 1,[3] the ALJ found Plaintiff met the insured status requirements through December 31, 2012 and had not engaged in substantial gainful activity since June 12, 2008, the alleged onset date. [R. 13, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had severe impairments of hypertension and neck pain status-post cervical fusion. [R. 13, Finding 3.] The ALJ also found Plaintiff had a non-severe impairment of generalized arthritis and acknowledged that Plaintiff alleged she suffered from depression, but the ALJ determined the alleged depression was not a medically determinable impairment. [R. 14.] At Step 3, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart A, Appendix 1. [R. 14, Finding 4.] The ALJ specifically considered Listings 1.04, 2.00, 4.00, 9.00, and 12.00. [R. 14–15.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform the full range of light work, as defined in 20 C.F.R. § 404.1567(b). [R. 15, Finding 5.] Based on this RFC, the ALJ determined at Step 4 that Plaintiff was unable to perform any of her past relevant work. [R. 18, Finding 6.] At Step 5, the ALJ found jobs existed in significant numbers in the national economy that Plaintiff could perform. [R. 19, Finding 10.] Further, based on her RFC for the full range of light work, and considering Plaintiff's age, education,

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

and work experience, the ALJ found Plaintiff not disabled as directed by Medical-Vocational Rule 202.11. [R. 19.] Accordingly, the ALJ determined Plaintiff had not been under a disability as defined by the Act from June 12, 2008, the alleged onset date, through the date of his decision. [R. 19, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision [R. 6], but the Council declined review [R. 1–3]. Plaintiff filed this action for judicial review on July 11, 2011. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ erred in failing to properly evaluate Plaintiff's complaints and credibility. [Doc. 12 at 2–4.] The Commissioner, on the other hand, argues the ALJ's credibility analysis was reasonable and proper. [Doc. 13 at 5–9.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial

4

evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court

5

enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence

---

[4] Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents

7

the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical

8

and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.     *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.     *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the

claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).   To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").   Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6]   20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).   When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50

---

[5]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a).

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition

12

for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the

pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v.*

14

*Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the

following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements

by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485;

*see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).  Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Brief Medical History**

In May 2003, Plaintiff underwent a cervical discectomy and fusion at C4-6 performed by Dr. Mike Tyler to address and alleviate left-side radicular pain.  [R. 196–98, 202–04.] By July 2003, Plaintiff's pain had resolved, and Dr. Tyler returned her to work full time.  [R. 201.]

In May 2008, Plaintiff began having left-sided shoulder and chest pain.  [R. 207–08.] X-rays revealed mild disc narrowing at C3-4 but no evidence of osteoarthritis of the shoulder.  [R. 220–21.]  On June 12, 2008, Plaintiff returned to Dr. Tyler, complaining of radicular pain on the left side.  [R. 269.]  Examination revealed intact muscle strength and

16

degenerative changes at C6-7.  [*Id.*]  An August 2008 examination revealed full range of motion of the neck and intact muscle strength and reflexes, but Plaintiff had pain and numbness with straight leg raising on the right.  [*Id.*]  Dr. Tyler assessed mild to moderate cervical spondylosis and noted Plaintiff was going to try to go back to work and wanted to treat her condition as conservatively as possible.  [*Id.*]

In November 2008, Dr. Joseph Gonzalez, a state agency physician, reviewed Plaintiff's records and completed a Physical Residual Functional Capacity Assessment form.  [R. 247–54.]  Dr. Gonzalez determined Plaintiff retained the RFC to perform the exertional requirements of light work.  [R. 248.]  Additionally, Dr. Judith Von, a state agency examiner, completed a Psychiatric Review Technique form.  [R. 255–68.]  Dr. Von noted Plaintiff reported a period of anxiety secondary to her brother's death, but Plaintiff was not taking medication for any mental impairments, did not report a history of psychiatric concerns, and did not report current symptoms.  [R. 267.]  Dr. Von opined Plaintiff did not have a medically determinable mental impairment.  [R. 255.]  Also in November 2008, Plaintiff presented to Dr. Barry Lee with complaints of neck pain and numbness of the left arm; Dr. Lee prescribed medication but did not assess any functional limitations.  [R. 296.]

In January 2009, Dr. Olin Hamrick, Jr., a state agency examiner, completed a Psychiatric Review Technique form.  [R. 273–86.]  Dr. Hamrick assessed Plaintiff with an anxiety-related disorder that was a non-severe impairment.  [R. 273.]  However, Dr. Olin made the same notations as Dr. Von—that Plaintiff had reported a period of anxiety due to her brother's death but was no longer taking medication and had no history of psychiatric concerns.  [R. 285.]

17

In February 2009, Plaintiff presented to Dr. Omolola Omotoso for a consultative physical examination.  [R. 287–91.]  Examination revealed limited range of motion of the neck and left shoulder, normal range of motion of the back, normal muscle strength in all extremities, no muscle weakness, normal straight leg raising, a normal gait, normal reflexes, and intact sensation.  [R. 288–91.] Dr. Omotoso opined Plaintiff's neck problems made it very difficult for her to carry out any kind of gainful employment.  [R. 289.]

In March 2009, Dr. William Cain, a state agency physician, reviewed Plaintiff's records and completed a Physical Residual Functional Capacity Assessment form.  [R. 297–304.]  Dr. Cain determined Plaintiff was capable of performing the exertional requirements of light work.  [R. 298.]

**Credibility**

Plaintiff contends the ALJ failed to properly evaluate Plaintiff's complaints and credibility by failing "to properly consider the evidence or apply the proper weight to the evidence, which is objective evidence of [Plaintiff's] complaints as well as the intensity and severity together with the underlying physical findings."  [Doc. 12 at 3.]  In support of her argument, Plaintiff recites her testimony regarding pain, numbness, swelling, muscle spasms, medication side effects, how long she can stand and walk, and how she spends most of her time laying down or in a recliner because these positions are most comfortable for her.  [*Id.*]  Plaintiff also contends she had a difficult time receiving treatment due to her lack of medical insurance and financial difficulties.  [*Id.* at 4.]  Plaintiff argues that "[t]here is nothing in the record to suggest that her assertion of her level of pain and difficulty functioning was anything but credible."  [*Id.*]  However, the Commissioner contends

18

Plaintiff's subjective complaints about the extent of her limitations were unsupported by the objective medical evidence and inconsistent with her daily activities and that inconsistencies in her testimony further undermined her credibility. [Doc. 13 at 6–8.] The Commissioner also argues that, while Plaintiff claims she lacked finances for medical treatment, the record is unclear on this point because Plaintiff received medical treatment from several medical providers from her alleged onset of disability in June 2008 through 2010. [*Id.* at 9.]

Whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record. SSR 96-7p, 61 Fed. Reg. at 34,485. The credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*; *see also Hammond*, 765 F.2d at 426 (stating that the ALJ's credibility determination "must refer specifically to the evidence informing the ALJ's conclusions").

The following is a nonexhaustive list of relevant factors the ALJ should consider in evaluating a claimant's symptoms, including pain: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, received to relieve the symptoms; and (6) any measures the claimant has used to relieve the

symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). If the ALJ points to substantial evidence in support of his decision and adequately explains the reasons for his finding on the claimant's credibility, the court must uphold the ALJ's determination. *Mastro*, 270 F.3d at 176 (holding that the court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency).

### The ALJ's Analysis of Plaintiff's Credibility

The ALJ began his assessment of Plaintiff's credibility by recounting her testimony from the hearing:

> At the hearing, the claimant discussed her education and work history. She said she has a 10th grade education. She testified that her last job ended in May 2008; it was driving a dump truck, and she had been working in that job for 6 years. She said her prior work[] [has] included being a ramp agent at the airport, operating a forklift in a factory, and operating a printer machine.
>
> The claimant discussed the problems that began in May 2008. She said she was out of work, and her brother was sick and in intensive care. She said she was having anxiety and chest pain and had to go to the emergency room on one occasion. She said that after that, she went back to Dr. Tyler, who had done her neck surgery, after having not seen him in a long time. She said she could not afford to keep going to Dr. Tyler. She explained that she just tried to keep her prescriptions filled and could not get a neck X-ray even though she asked for one because she had no insurance.
>
> The claimant discussed her physical symptoms at the hearing. She explained that she has trouble turning her neck, she experiences a lot of pressure in her neck, and her head feels heavy on her neck. She testified that she has numbness when standing, lower back pain, right leg spasms, and left shoulder pain. She specified that her numbness is in her right hand and foot and sometimes in her left foot which causes problems with standing and walking. She admitted that her chest pain had improved with controlling her blood pressure by watching what

she eats. She said that she has pain in her shoulder and lower back and in her upper arms if she uses them too much.

At the hearing, the claimant discussed her muscle spasms. She said her muscle spasms do not come at any particular time, and they start at her hip and move down to her foot. She said she tries not to do a lot of walking, and sometimes has to sit down in church when she is supposed to stand. She said the muscle spasms even occur when she is lying down.

At the hearing, the claimant testified regarding her mental symptoms. She said she has anxiety and tries not to get too stressed out. She said she was on "depression pills", but they caused her to not "feel good".

At the hearing, the claimant testified about her medications. She said she takes nitroglycerine about 4 times a month. She said the side effects of her medications are sleepiness and drowsiness. She said she takes medicine for muscle spasms every day and pain medication 2, 3, or 4 times a day.

The claimant discussed her limitations at the hearing. She said she can stand up for 40 minutes to 1 hour, but sometimes only for 20 minutes. She said she does not do much walking, but can get around her house. She said sitting down causes a nagging, burning feeling. She specified that, if she is in the doctor's office, she just bears the pain of sitting.

At the hearing, the claimant testified about her activities of daily living. She said she lies down most of the day. She said lately, that she has been going to her mother's house or her aunt's house and lies down there. She said she has trouble sleeping due to hot flashes and the blood pressure medication that causes her to get up and go to the bathroom. She testified that she is able to wash dishes and do laundry, but she admitted that her daughter comes to help her with more demanding chores.

[R. 15–16.] The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but Plaintiff's allegations were not credible to the extent they were inconsistent with the ALJ's determination of Plaintiff's RFC.

[R. 16.]

21

The ALJ next discussed the medical evidence and explained his decision that Plaintiff's allegations were not fully credible.  [R. 16–18.]  First, the ALJ found that, while Plaintiff's hypertension was a severe impairment, it did not prevent all work-related activities.  [R. 16.]  The ALJ found Plaintiff's hypertension was adequately controlled by medication and that treatment records demonstrated Plaintiff's blood pressure had been stable even when she had not been taking her medication.  [R. 16–17.]  Next, the ALJ determined that, while Plaintiff's neck pain was a severe impairment, it did not prevent all work-related activity.  [R. 17.]  The ALJ noted a finding by Dr. Tyler that, despite cervical changes, Plaintiff had a full range of motion in her neck.  [*Id.*]

The ALJ opined that, given the allegations of totally disabling symptoms, he would expect to see some indication in the treatment records of restrictions placed on Plaintiff by her treating physicians; however, the record revealed that no treating physician had recommended restrictions.  [*Id.*]  Further, the ALJ noted that, despite Plaintiff's allegations that she had been taking "depression pills" that did not make her feel well, the record contained no diagnosis or evidence of depression or a prescription for depression medication.  [*Id.*]  The ALJ also noted there was no evidence in the record that Plaintiff complained of medication side effects to her physicians.  [*Id.*]  Moreover, the ALJ found Plaintiff's activities of daily living were inconsistent with her allegations of significant functional limitations but were consistent with the ALJ's assessment of Plaintiff's RFC.  [*Id.*]  The ALJ explained he found Plaintiff's activities of daily living, when viewed in conjunction with the other inconsistencies regarding Plaintiff's allegations, further limited Plaintiff's credibility as to her pain and resulting limitations.  [*Id.*]

22

Finally, the ALJ discussed the opinions of the state agency psychiatric consultants; the consultative examiner, Dr. Omotoso; and the state agency medical consultants who performed RFC assessments. [R. 18.] The ALJ accorded considerable weight to the opinions of the psychiatric consultants, who found Plaintiff's only mental impairment was anxiety and that this impairment imposed no limitation on her ability to perform work-related activities, because their opinions were consistent with the medical evidence of record. [*Id.*] The ALJ gave little weight to Dr. Omotoso's opinion that Plaintiff's neck pain would make it difficult for her to carry out any kind of gainful employment because this opinion was inconsistent with the medical evidence. [*Id.*] The ALJ also noted that a determination regarding disability is an issue reserved to the Commissioner. [*Id.*] The ALJ gave some weight to the RFC assessments of the medical consultants because their findings that Plaintiff could perform light work was consistent with the medical evidence but their findings of additional limitations was not supported by the medical evidence. [*Id.*] The ALJ concluded,

> In sum, the above residual functional capacity assessment is supported by the medical evidence of record. The claimant can perform the full range of light work despite her neck pain and hypertension because the requirements of light work as the physical requirements of light work [sic] are within the claimant's abilities.

[*Id.*]

### *Analysis*

Unfortunately, Plaintiff merely regurgitates the evidence already discussed, considered, and weighed by the ALJ and fails to explain why the evidence demands a

23

contrary finding.  Thus, Plaintiff has failed to identify any error in the ALJ's analysis that would require remand.

While Plaintiff correctly notes that "'the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative'" of the limiting effects of a claimant's pain [Doc. 12 at 2–3 (quoting *Hyatt*, 899 F.2d at 337)], as stated above, the ALJ is not required to wholly credit a claimant's allegations as to her pain; the ALJ must also make a finding on the credibility of the claimant's statements based on a consideration of the entire case record, SSR 96-7p, 61 Fed. Reg. at 34,485.[7]  Credibility determinations are generally left to the ALJ's discretion but should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010; *see also Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1499 (10th Cir. 1992) ("Credibility is the province of the ALJ."); *Gosset v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988) (stating that, where the ALJ has given specific, legitimate reasons for discrediting a claimant's testimony, a reviewing court should "generally treat credibility determinations made by an ALJ as binding").

Here, the ALJ conducted a proper analysis in determining the credibility of Plaintiff's subjective complaints by fully explaining his decision and citing relevant evidence.  For example, in determining Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible, the ALJ considered Plaintiff's subjective complaints in conjunction with her ability to perform activities of daily living and found Plaintiff's daily activities were inconsistent with alleged degree of limitation.  *See* 20

---

[7] As noted in the Applicable Law section above, the Fourth Circuit's decision in *Hyatt* prompted the Commissioner to issue SSR 90-1p, which has since been superseded by SSR 96-7p.

C.F.R. § 404.1529(c)(3)(i) (stating a claimant's daily activities is one factor the ALJ will consider will evaluating a claimant's symptoms, including pain). Further, the ALJ found it compelling that Dr. Tyler, who treated Plaintiff and performed her neck surgery, found Plaintiff had a full range of motion of the neck in August 2008 and failed to impose any restrictions on Plaintiff. [R. 17; *see* R. 269 (Dr. Tyler's treatment record of August 12, 2008).]

Moreover, substantial evidence supports the ALJ's finding that Plaintiff's complaints regarding the effects of her symptoms are inconsistent with the record. For instance, the record shows that Plaintiff's hypertension was adequately controlled by medication and that her blood pressure was stable, both on and off medication. [R. 306–17; *see Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling." (citing *Purdham v. Celebrezze*, 349 F.2d 828, 830 (4th Cir. 1965); 20 C.F.R. § 404.1530)).] In addition, as the ALJ pointed out, Plaintiff's treating physicians never imposed any restrictions based on any of her impairments.

While evidence in the record may support a finding in favor of Plaintiff, the Court may not substitute its judgment for the ALJ's in light of the substantial evidence supporting the ALJ's determination. *See Craig*, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence); *Laws*, 368 F.2d at 642 (holding it is not

within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner, so long as the decision is supported by substantial evidence); *Snyder*, 307 F.2d at 520 (same). Thus, without a showing by Plaintiff that the ALJ committed a clear error or that his decision is not supported by substantial evidence, the Court is bound to uphold the ALJ's decision.[8]

---

[8] To the extent Plaintiff argues the ALJ's decision should be reversed based on Plaintiff's inability to afford medical treatment [*see* Doc. 12 at 4], the Court concludes Plaintiff's argument is without merit. The Administration has provided that

> the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner.

SSR 96-7p, 61 Fed. Reg. at 34,487. The Ruling further provides the explanations offered may provide insight into the claimant's credibility, and the Ruling lists various factors that may explain a claimant's limited treatment, including that the claimant "may be unable to afford treatment and may not have access to free or low-cost medical services." *Id.*; *see also Futrell v. Shalala*, 852 F. Supp. 437, 441 (E.D.N.C. 1994) (concluding "that without affording [the claimant] the opportunity to document her financial condition, the ALJ committed error in finding that [the claimant's] testimony was totally discredited by her failure to seek medical treatment"). Additionally, the Fourth Circuit has held "[a] claimant may not be penalized for failing to seek treatment she cannot afford," *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986), because "[i]t flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him," *Gordon*, 725 F.2d at 237.

Here, Plaintiff has failed to direct the Court to any portion of the ALJ's decision suggesting the ALJ found Plaintiff was incredible or not disabled or drew any negative inferences based on a lack of or failure to seek treatment. Rather, the ALJ based his decision on the treatment notes in the record, which did not support Plaintiff's allegations of disabling limitations. [*See* R. 13–19.] Moreover, to the extent the ALJ relied on the lack of evidence in the record, the ALJ explained that the "missing" evidence could have been readily supplied by Plaintiff at her appointments with her treating physicians, such as complaints about the side effects of her medications. [R. 17 ("Despite her testimony regarding significant medication side effects, the evidence of record fails to indicate that the claimant ever complained of such side effects to any of her treating or examining physicians. . . . [O]ne would expect that side effects including drowsiness and sleepiness would be readily reported.").] Thus, the Court has failed to discern any error in the ALJ's decision related to Plaintiff's inability to afford medical treatment.

## CONCLUSION AND RECOMMENDATION

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be AFFIRMED.

IT IS SO RECOMMENDED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

January 22, 2013
Greenville, South Carolina